# N. Y. SUPERIOR COURT.

### CHARLES H. SWORDS and another agt. ADONIRAM J. OWEN.

The act of 1835 (L. 1833. Ch. 281), entitled an act to prevent persons from transacting business under *fictitious names*, prohibits the *transaction of business* in the name of a partner not interested in the firm, and requires that the designation " and company" or "and Co." shall represent an actual partner.   A violation of the statute is deemed upon conviction a misdemeanor punishable by fine.

This being a penal statute, it implies a *prohibition*, and every act done against it is not only illegal but absolutely void.

The prohibition being against *transacting business*, it renders it unlawful for a person to conduct his business under the designation of " and company" or " and Co." unless such addition represents an actual partner, and such person cannot make any *executory contract* whatever, which can be enforced by him, while using such prohibited title.

Where this statute defense was interposed to a complaint by the plaintiffs who were alleged to be partners doing business under the firm name and style of " Swords, Betty & Co ," and the employment of the plaintiffs by the defendant as his brokers, to purchase stock—the purchase thereof—the neglect and refusal of the defendant to take the same, and a loss thereupon to the plaintiffs of $3,000 :

*Held*, on demurrer to such defense for insufficiency, that the judgment of the special term overruling the demurrer be *affirmed*, with costs.

*Heard at the March General Term*, 1872.

*Before* MONELL, FREEDMAN *and* CURTIS, *JJ.*

APPEAL from an order overruling a demurrer to one of the defenses.

THE complaint alleged that " the plaintiffs, were copartners doing business in the city of New York, under the firm name and style of Swords, Betty & Co."   It then alleged as a cause of action, the employment of the plaintiffs by the defendants as his brokers, to purchase certain shares of stock; the purchase of such stock, the neglect and refusal of the defendant to take the same, and a loss thereupon to the plaintiffs of three thousand dollars.

The defendant, for a third defense, averred upon informa-

tion and belief, that all the alleged transactions were wrongfully, unlawfully and wickedly made by the plaintiffs, in carrying on and transacting business, including that set forth in their complaint, under the firm name and designation of Swords, Betty & Co., and that the designation " & Co." did not then and there represent an actual partner, nor partners, and that said firm were carrying on business in the city of New York, and said copartnership was not a commercial copartnership, located and transacting business in foreign countries; neither had such copartnership used such name of Swords, Betty & Co., and the business conducted by it at any time thereafter continued by some one, nor by any of the copartners, nor by their assigns or appointees, neither was any certificate signed and acknowledged before any officer of law, authorized to take acknowledgments of deeds, declaring the persons dealing under said name of Swords, Betty & Co., with their places of abode, nor was such certificate filed with the clerk of the city and county of New York, in which their principal place of business then and there was, neither was the same published in any newspaper in this state, neither had said copartnership business relations with foreign countries.

To this defense the plaintiffs demurred, for insufficiency.

The court, at special term overruled the demurrer, and the plaintiffs appealed.

R. H. HUNTLEY, *for appellant.*

This appeal brings up the question whether the contracts of a firm doing business with " & Co.," attached to the firm name; there being no one to represent the " & Co.," as required by statute, are invalidated by the failure to comply with the requirements of the statute, which reads as follows (*Laws of 1833, chap.* 281).

" Section 1. No person shall hereafter transact business in the name of a partner not interested in his firm, and where

the designation 'and Company,' or '& Co.' is used, it shall represent an actual partner or partners.

"Section 2. Any person offending against the provisions of this act, shall, upon conviction thereof, be deemed guilty of a misdemeanor, and be punished by fine not exceeding one thousand dollars."

I. A contract which has a penalty affixed by statute, is, of course, void; but the invalidity of a contract so prohibited does not impair a contract founded upon a new consideration and otherwise valid, collateral to the void contract, but not depending upon it.

"The test, whether a demand connected with an illegal transaction, is capable of being enforced at law, is whether the plaintiff requires any aid from the illegal transaction to establish his case" (*Chitty on Contracts, Springfield ed.,* 657, *and cases cited*).

The rule is thus stated by Chitty, in *Fergusson* agt. *Norman,* (6 *Scott,* 794), TINDAL, *Ch. J.,* draws a distinction between the neglect to perform acts, the performance of which is required by statute, but which are not collateral to the contract, but are to precede, or to accompany and form a part of it, and acts which are collateral and distinct from, and wholly independent of, the contract itself, and puts the following instance: Section 23 of 39 and 40 Geo. III. ch., 29, requires under a penalty of £10, that the pawnbroker's names and business shall be painted over his door; suppose this were altogether omitted or incorrectly done, the party would be liable for the penalty; but it could scarcely be contended that all contracts entered into by him as pawnbroker would, therefore, be avoided" (*Chitty on Contracts,* 697).

The case here put by TINDAL, *Ch. J.,* is precisely analogous to the case at bar, and the claim of the defendants is exactly the one condemned by him. Although the plaintiffs may be liable to the penalty prescribed by statute for doing business under a firm name forbidden by statute, the contracts of such firm are not, therefore, void for illegality.

This distinction is also clearly expressed in *Story on Contracts*, *3d ed.*, 649, § 621, as follows:

" A distinction is to be observed between cases where the contract is directly in violation of the statute, and cases where it is collaterally connected with some incidental illegality not contemplated in its terms. If the illegality do not form a portion of the contract, but be entirely collateral and capable of complete separation therefrom, it will be binding."

On this point is cited the case of *Johnson* agt. *Hudson*, (11 *East.*, 180), where a vender of tobacco failed to comply with the statute regulations requiring a license. In an action against a purchaser, this failure was set up as a defense ; but the court held that the contract of sale was collateral, and that the seller could sue.

*Johnson* agt. *Hudson*, was regarded as decisive, and followed in the subsequent case of *Smith* agt. *Mawhood*, (14 *Meeson & Welsby*, 452), which cannot, in principle, be distinguished from the case at bar.

" Where an act is absolutely prohibited by statute, or is contrary to public policy, all notes, &c., given in furtherance of that act are null and void ; but where the statute fixes a mere penalty, contracts in relation to matters which subject the maker to that penalty are not invalidated" (*Hill* agt. *Smith*, 1 *Morris*, 70 ; 8 *U. S. Digest*, 13).

" A contract, the consideration or object of which is in violation of law, is void, and a court of justice will not lend its aid to enforce it; but a subsequent contract, if unconnected with the illegal act, and for a new consideration, is valid, and will be enforced, although it may have grown out of the illegal transaction, and the party to whom the promise was made may have a knowledge of it" (*Smith* agt. *Barstow*, 2 *Douglas*, 155 ; 9 *U. S. Digest*, 20 ; and see *Harris* agt. *Runnels*, 12 *How. U. S.*, 79).

II. An illegal contract does not invalidate a subsequent contract, not an inseparable part of the illegal contract,

though having reference thereto, when the subsequent contract is founded on a new and valid consideration.

In *Armstrong* agt. *Toler*, (11 *Wheaton*, 258), MARSHALL, *Ch. J.*, delivering the opinion of the court, it was held, that although where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not enforce it; yet where an unlawful act has been done —*e. g.*, an unlawful importation of goods—a subsequent independent contract in reference thereto, such as to advance money to procure their delivery, being founded on a new consideration, is not avoided by the illegal importation, although such illegal importation was known to the person advancing the money, when the contract was made, provided he was not interested in the goods and had no previous concern in their importation.

In the *Ocean Insurance Co.* agt. *Polleys*, (13 *Peters*, 159), STORY, *J.*, says :

"We all know that there are cases where a contract may be valid, notwithstanding it is remotely connected with an independent illegal transaction, which, however, it is not designed to aid or promote."

In *Thornburg* agt. *Harris*, (3 *Coldwell, Tenn.*, 157, 28 *U. S., Digest*, 16), it was held that where, after an illegal act was done, a new contract, wholly unconnected with the illegal act, is formed, founded upon a new consideration, and no part of the original scheme, the new contract in itself was not unlawful.

III. So, when a contract is innocent, and in carrying it out there is a violation of a statute, this does not avoid the contract, though the offender may be punished for the violation (*Branch Bank* agt. *Crocheron*, 5 *Ala.*, 250 ; 4 *U. S. Dig.*, 69 ; see also *Favor* agt. *Philbrick*, 7 *N. Hamp.*, 326 ; 4 *U. S. Dig.*, 69 ; *Coombs* agt. *Emery*, 2 *Shep.*, 404, same page of digest.)

IV. *Ferdon* agt. *Cunningham*, (20 *How.*, 154) ; *Best* agt. *Bauder* (29 *How.*, 489), and other cases of a similar character,

only prove, what nobody denies, that a recovery cannot be had upon a contract which is itself prohibited by statute, by affixing a penalty or otherwise; they do not in any case assert or imply the invalidity of subsequent contracts collateral to the prohibited contract.

*Hoyt* agt. *Allen*, (2 *Hill*, 322), cited by the defendant, is a direct authority for the plaintiff. The pleading there was as good as it is here, and no better; and as a question of pleading purely, the decision was against the defendant.

The substance attempted to be set up as a defense, is not passed upon except negatively, and that seems to be against the validity of such matter as a defense.

Judge COWEN says: "Admitting the principle of the plea is correct, still it is impossible to support it." Such is not the language in which courts affirm "principles." The inference is all the other way.

The law is liberally, yet perhaps, correctly, stated by the reporter tn his note to the case on p. 323.

"Every contract made for, or about any matter or thing," &c. But in the case at bar, the contract made "about the matter or thing," is not prohibited by statute, and the rule, therefore, does not apply.

V. The order overruling the demurrer should be reversed, and judgment on the demurrer ordered for plaintiffs, with costs.

D. M. PORTER, *for respondent.* ,

Plaintiffs sue to recover for differences on stock transactions; for "a third defense," the defendant avers that all of the alleged transactions were wrongfully, unlawfully and wickedly made by the plaintiffs in carrying on and transacting business, including that set forth in the complaint, under the firm name and designation of Swords, Betty & Co., and that the designation "& Co." did not then and there represent

an actual partner nor partners, and the answer (in this defense) negatives the exception in the statutes.

(a.) The demurrer admits the facts in the defense demurred to (*Hall* agt. *Bartlett*, 9 *Barb.*, 297).

(b.) The statute relied upon by the respondent is entitled, "an act to prevent persons from transacting business under fictitious names," and was passed April 23, 1833 (3d *Rev. Stat.* 5th *ed.*, 978). The first section prohibits the use of the words "& Co.," unless it represents an actual partner or partners. The second section makes it a criminal offense, punishable by a fine. The law is prohibitory, and the plaintiffs, in making the identical contract sued upon, did what this statute expressly prohibited them from doing. The plaintiffs cannot recover on a contract made by them in a manner prohibited by law.

(c.) This is so, even if the law does not prohibit, but simply imposes a penalty (but the statute under consideration, as before stated, expressly prohibits). (*Wheeler* agt. *Russell*, 17 *Mass.*, 258; *Ferdon* agt. *Cunningham*, 20 *How.*, 154; *Beman* agt. *Tugnot*, 5 *Sandf.*, 153; *Bell* agt. *Quinn*, 2 *Sandf.*, 146; *Griffith* agt. *Wells*, 3 *Denio*, 226; *Seneca County Bank* agt. *Lamb*, 26 *Barb.*, 595; *Barton* agt. *Fort Jackson and U. F. P. R. Co.* 17 *Barb.*, 397; *Jackson* agt. *Walker*, 5 *Hill*, 27; *Porter* agt. *Havens*, 37 *Barb.*, 343; *Coppell* agt. *Hall*, 7 *Wall.*, 542; *Hoyt* agt. *Allen*, 2 *Hill*, 322; *Law* agt. *Hudson*, 11 *East.*, 300; *Little* agt. *Poole*, 9 *Barn. & C.*, 192; *Foster* agt. *Taylor*, 5 *B. & Ad.*, 886; *Abbott* agt. *Rogers*, 16 *C. Bench*, 277; *Hall* agt. *Franklin*, 3 *Mason & W.*, 259; *Best* agt. *Bander*, 29 *How.*, 489; *De Groot* agt. *Van Duzer*, 20 *Wend.*, 390; *Pennington* agt. *Townsend*, 7 *Wend.*, 280; *Hallett* agt. *Novion*, op. of THOMPSON, 14 *Johns*, 290; *Chitty on Contracts*, 6th *ed.*, 443, 767-8; *Collier on Partnership*, § 645; *Parsons on Partnership*, 5th *ed.*, 341, 458).

(d.) The object of this statute is the protection of the public from fraud, and not a mere revenue regulation (*See*

*Story on Contracts*, 443, 767-8, 10 *a. ed*), Its title is, " to prevent persons from transacting. business under fictitious names."

(*e.*) The plaintiffs come into court, and admit themselves guilty of a crime, and they must be left without remedy, for the reasons stated by Lord MANSFIELD in *Holman* agt. *Johnson*, (*Cowper* 343), in which he said " the objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff; not for the sake of the defendant, but because the court will not lend their aid to such a plaintiff."

(*f.*) The real test as applied by the courts to all cases which seem to be tainted with illegality, is to be applied to this, to wit: Can the plaintiffs maintain their action without relying upon their illegal act? If such act forms one necessary link in the proof of their case, or right to recover, they must fail (*Gregg* agt. *Wyman*, 4 *Cush.*,322, and cases cited).

(*g.*) " When a contract grows out of, or is connected with an illegal act, the court will not lend its aid to enforce it. And if it be, in fact, connected with the illegal transaction, it is tainted with the illegality of the transaction from whence it sprung." It is void. It is not necessary to declare a prohibited act void, but it is void, because prohibited (*Barton* agt. *Fort Jackson & U. F. P. R.*; 17 *Barb.*, 397).

" When a contract springs out of a violation of the statutes of the state, the court will not lend its aid in enforcing it." " In such a case, a party cannot do an act prohibited by law, and then come into court and ask to enjoy the fruits of the transaction" (*Seneca Co. Bank* agt. *Lamb*, 26 *Barb.*, 595).

The order should be affirmed, with costs and disbursements (*The Erie Railway Co.* agt. *Ramsey*, 10 *Abb., N. S.*, 109).

*By the court*, MONELL, J.—In 1833, the legislature enacted a statute embracing the following two sections (*Laws of* 1833, *chap*. 281).

" Section 1. No person shall hereafter transact business in the name of a partner not interested in his firm, and where the designation " and Company," or " & Co." is used, it shall represent an actual partner or partners.

" Section 2. Any person offending against the provisions of this act, shall, upon conviction thereof, be deemed guilty of a misdemeanor, and be punished by a fine not exceeding one thousand dollars."

The act is entitled " an act to prevent persons from transacting business under fictitious names."

Literally, the statute prohibits the transaction of business in the name of a partner not interested in the firm, and requires that the designation " and Company," or " and Co," shall represent an actual partner. A violation of the statute is deemed, upon conviction, a misdemeanor punishable by fine.

The prohibition does not, nor does the penalty, in terms apply to contracts made by such firms, and does not, therefore, in terms declare such contracts void, but the act makes it unlawful for any person or persons to transact business by, or in the name of, a fictitious firm.

The answer alleges that the contract, upon which the cause of action arose, was made by the plaintiff, in carrying on and transacting business under the firm name of " Swords, Betty & Co.," and that the addition of " & Co." did not then represent an actual partner; and the allegation is admitted by the demurrer to be true.

The contract, then, was made by a person while unlawfully using a prohibited style, the using of which was a criminal offense, punishable by fine.

It is not necessary that a penal statute should contain prohibitory words. A penalty implies a prohibition, and every act done against it, is not only illegal, but absolutely void (*Hallett* agt. *Novion*, 14 *J. R.*, 290).

The prohibition is against transacting business; and it renders it unlawful for a person to conduct his business under the designation of " and Company," or " & Co.," unless such addition represents an actual partner; and such person cannot make any executory contract whatever, which can be enforced by him, while using such prohibited title.

It would be impossible to give significance and effect to the statute, unless it was adjudged to apply to all business transacted under the unauthorized name; and, therefore, to all contracts made in the name, or when using the prohibited style, rendering all such business transactions and contracts absolutely void.

The decisions in our state courts strongly support the views I have expressed, and quite uniformly hold, that all transactions prohibited by statute are void.

In *Hallett* agt. *Novion* (*supra*) an act of congress had made it a misdemeanor, punishable by fine and imprisonment, for a person to fit out and arm any ship or vessel with intent to employ her in the service of any foreign power, &c.

The act contained no words of prohibition, but the court held, as before quoted, that a penalty implied a prohibition, and every act done against it is void.

In *Pennington* agt. *Townsend*, (7 *Wend.*, 276), an act of the legislature made it unlawful for any person or association to keep an office for transacting banking business, &c., unless expressly authorized by law, giving a penalty.

In the act there was no clause declaring void the securities taken. The action was upon a check which had been discounted by an unauthorized banking association; and the court held the transaction void under the statute.

Judge NELSON, in referring to the proposition that the penalty was the only consequence of a violation of the act, says, " there is no distinction between an act *malum prohibitum* and *malum in se*. Both are equally forbidden and unlawful, and I will add, both are immoral, and cannot be

the foundation of a civil right, that will be enforced in a court of justice."

In *Griffith* agt. *Wells,* (3 *Denio,* 226), the action was to recover for liquor sold by a person not having a license. The act of the legislature did not, in terms, prohibit the sale of liquors without a license, nor declare the act illegal. It only inflicted a penalty upon the offender. But the court held the contract to be illegal, and no action would lie to enforce it.

An analagous case was decided in the N. Y. common pleas (*Ferdon* agt. *Cunningham,* 20 *How.,* 154), where a contract for service by a public cartman, was held to be void, the cartman not having a license, as required by a city ordinance, which merely affixed a penalty for keeping or using a public cart, without first obtaining a license therefor.

*Best* agt. *Bauder* ( 29 *How.,* 489), although only a special term decision, is strongly in point. The action was for goods sold. The defense was, that the seller was engaged in the business of peddling, without a license, in violation of the revenue laws of the United States. The court overruled a demurrer to the defense, holding that the penalty in the act implied a prohibition, rendering the contract of sale void. In that case, the distinction which is suggested in some of the cases (*Griffith* agt. *Wells, supra,* and *Bell* agt. *Quinn,* 2 *Sandf.,* 150), between a license for revenue only, and such as have in view the protection of health or morals, or the prevention of fraud, is repudiated.

In *Hoyt* agt. *Allen,* (2 *Hill,* 322), although the decision was as to the sufficiency of the pleading, there is an intimation which, taken in connection with the reporter's note, sustains the principle of all the foregoing cases. And the principle is further supported by the case of the *U. S. Bank* agt. *Owens,* (2 *Peters,* 527), where a contract was held void as being in violation of the charter of the bank, forbidding the taking of more than six per cent. interest.

Under the authority of the cases cited, we must hold the

transaction set forth in the complaint to be illegal and void, and not enforceable in the court of justice; and, therefore, that the matter set up in the answer, constitutes a defense to the action.

It is impossible, I think, to apply the distinction in this case, claimed by the respondent's counsel, that this is a mere collateral transaction, not connected with, but remote from, the prohibited act. Such distinction clearly defined in the cases he has referred to where it is held, that if the illegality does not form any portion of the contract, but is merely collatteral, and capable of complete separation from it, the contract is binding.

The distinction, however, cannot be made available in this case. Tqe illegal act is the transacting of business. Business cannot be transacted except by and under contracts express or implied, executory or completed. Every executory contract made in transacting business, must, necessarily, therefore, be void under the prohibition against transacting business, under a fictitious firm name. Any other application of the statute would render it wholly ineffective, as the design of the legislature as expressed in the title of the act, was, to prevent persons from transacting business under fictitious names.

In their complaint the plaintiffs aver, that at the time they made the contract with the defendant, they were doing business under the firm name of "Swords, Betty & Co.," and the answer alleges that the transaction was made with the plaintiffs, while unlawfully transacting business under such fictitious firm name.

These several allegations, are, in my opinion, sufficient to bring the case within the provisions of the statute prohibiting the transacting of business in the name of a partner not interested in the firm.

The order appealed from should be affirmed, with costs.